IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00145-BNB

RANDY KAILEY,

     Plaintiff,

v.

ARISTEDES ZAVARAS, et al.,

     Defendants.

---

## ORDER TO DISMISS IN PART AND TO ASSIGN CASE TO A DISTRICT JUDGE AND TO A MAGISTRATE JUDGE

---

I. BACKGROUND

     Plaintiff, Randy Kailey, is in the custody of the Colorado Department of

Corrections (DOC) and currently is incarcerated at the DOC correctional facility in

Sterling, Colorado.  Mr. Kailey filed a Prisoner Complaint pursuant to 42 U.S.C. § 1983

on January 21, 2011.  Magistrate Judge Boyd N. Boland reviewed the Complaint,

determined that Mr. Kailey had failed either to pay the $350.00 filing fee or in the

alternative to request leave to proceed pursuant to 28 U.S.C. § 1915, and entered an

order on January 31, 2011, instructing Mr. Kailey to cure the deficiency.  On March 11,

2011, Mr. Kailey cured the deficiency and Magistrate Judge Boland granted Mr. Kailey

leave to proceed pursuant to § 1915.

     Magistrate Judge Boland then entered an order on March 22, 2011, directing Mr.

Kailey to file an Amended Complaint that is in keeping with Fed. R. Civ. P. 8 and assert

how each named defendant personally participated in violating his constitutional rights.

After two extensions of time, Mr. Kailey filed an Amended Complaint on July 18, 2011.

The Amended Complaint is seventy-three pages long, names eighty-six defendants,

and fails to contain a short and plain statement showing that Mr. Kailey is entitled to

relief.  The claims are repetitive and not presented in the manner required by Rule 8.  In

*Kailey v. Ritter, et al.*, No. 11-cv-00143-LTB at Doc. Nos. 7 and 11 (D. Colo. June 23,

2011), Mr. Kailey was instructed to amend his complaint on two separate occasions;

each time he failed to comply with the Court's directives to comply with Rule 8.  Given

Mr. Kailey's documented inability to comply with the Court's directives, the Court finds

that allowing Mr. Kailey a second opportunity to comply with Magistrate Judge Boland's

March 22 Order in this case is futile.

II. ANALYSIS

The Court must construe the Amended Complaint liberally because Mr. Kailey is

a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court cannot act as a *pro se*

litigant's advocate.  *Hall*, 935 F.2d at 1110.

Overall, Mr. Kailey has failed to comply with Rule 8.  The Court, nonetheless,

has reviewed the claims, consistent with *Gee v. Pacheco*, 627 F.3d 1178 (10th Cir.

2010), and has determined as follows.  Most of Mr. Kailey's claims are barred by the

statute of limitations and are legally frivolous.  Part of Claim Eight, however, withstands

summary dismissal and will be assigned to District Judge Robert E. Blackburn, pursuant

to D.C.COLO.LCivR 40.1C.1., and to Magistrate Judge Boyd N. Boland.

Mr. Kailey asserts ten claims including: (1) restricted or limited visitations with his

adult daughters and grandchildren in violation of his First Amendment right to familial

2

association; (2) limited or restricted telephone conversations with his adult daughters and grandchildren in violation of his First Amendment right to familial association and his Ninth Amendment right to privacy; (3) restricted and limited written correspondence with his adult daughters and grandchildren in violation of his First Amendment right to familial association and his Ninth Amendment right to privacy; (4) confiscation of pictures of his adult daughters and grandchildren in violation of his Fourth Amendment right to be free from unreasonable searches and seizures; (5) confiscation and destruction of his Guidepost magazines in violation of his First, Fourth, Fifth, and Fourteenth Amendment rights; (6) interference with his attempts to assist his family in obtaining "emergency outbreak community relief" and in attending religious services or other events in violation of his First Amendment right to religious freedom; (7) a strip search after attending a religious service in violation of his Fourth, Fifth, and Fourteenth Amendment rights; (8) injuries due to unsafe working and living conditions in violation of his Eighth Amendment rights; (9) retaliation for filing administrative grievances in violation of his First and Fourteenth Amendment rights; and (10) a restatement of Claims One through Nine.

A.  Claims One, Two, and Three

Mr. Kailey was convicted in the Jefferson County District Court of two counts of aggravated incest committed against his three and four-year old daughters in October 1984, and was sentenced on January 19, 1986, to two consecutive, sixteen-year terms of incarceration.  *See State of Colo. v. Kailey*, 807 P.2d 563 (Colo. App. Mar. 18, 1991).

The United States Supreme Court has held that "parents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close

relations with their children." *See Hodgson v. Minnesota*, 497 U.S. 417, 484 (1990) (Scalia, J., concurring in part and dissenting in part, and citing *Santosky v. Kramer,* 455 U.S. 745, 753-754 (1982)); *Caban v. Mohammed,* 441 U.S. 380 (1979); *Stanley v. Illinois,* 405 U.S. 645, 651-652 (1972)).  "Access is essential . . . to families and friends of prisoners who seek to sustain relationships with them."  *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).  However, "[t]he very object of imprisonment is confinement," "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner," *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003), and "freedom of association is among the rights least compatible with incarceration," *id.* (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001)).

Prisoners, however, do not have a fundamental right to visitation arising directly from the Constitution.  *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (denial of prison access to particular visitor is well within the nature of restriction associated with a prison sentence).  "Rather, prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner. . . ."  *See Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998).  The U.S. Constitution allows prison officials to impose reasonable restrictions upon visitation, even visitation with family members. *Overton*, 539 U.S. at 131.

States promulgate regulations as to who may be allowed to visit inmates.  When a regulation restricts an inmate's rights, the courts determine if the regulation is reasonably related to a legitimate penological interest.  *See id.* (some curtailment of freedom of association must be expected in the prison context).  Colorado regulations

4

do not mandate a right to prison visitation.  *See* DOC Admin. Reg. 300-01, § IV(A(1)

(social visiting is a privilege to be approved, denied, suspended, or revoked by facility

administrator).  If "suspension of an inmate's visitation privileges is shown to be

imposed to meet legitimate penological objectives . . . suspension . . . does not amount

to deprivation of due process."  *See Buenabenta v. Neet*, 160 P.3d 290, 295 (Colo. App.

2007).

In assessing the DOC visitation restriction, the standard set forth under *Turner v.*

*Safley*, 482 U.S. 78, 89 (1987), is applied.  *See Wirsching v. Colo.*, 360 F.3d 1191, 1201

(10th Cir. 2004) (finding that the refusal of "visits between a convicted sex offender who

refused to comply with the requirements of the treatment program and his child" did not

violate the prisoner's First and Fourteenth Amendment rights).  The standard includes a

balancing between the guarantees of the Constitution and legitimate concerns of the

prison administrators.  *See Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002).

"*Turner* thus requires courts, on a case-by-case basis, to look closely at the facts of a

particular case and the specific regulations and interests of the prison system in

determining whether prisoners' constitutional rights may be curtailed."  *Id.* at 1185.  In

conducting the analysis the court follows a four-step process, which includes

determining (1) whether a rational connection exists between the prison policy

regulation and a legitimate governmental interest advanced as its justification; (2)

whether alternative means of exercising the right are available notwithstanding the

policy or regulation; (3) the effect accommodating the exercise of the right would have

on guards, other prisoners, and prison resources generally; and (4) whether ready,

easy-to-implement alternatives exist that would accommodate the prisoner's rights.  *See*

*Turner*, 482 U.S. at 89-91.

Throughout Claims One, Two, and Three, Mr. Kailey describes incidents that took place from June 1998 through September 2009 regarding restrictions on his ability to communicate with his adult daughters and grandchildren.  All of these incidents except Mr. Kailey's 2009 request to reinstate his ability to correspond with his daughters and grandchildren are barred by the statute of limitations.  *See Robinson v. Maruffi*, 895 F.2d 649, 655 (10th Cir. 1990) (continuing pattern of wrongful conduct does not allow a plaintiff to challenge discrete acts of wrongful conduct outside the statute of limitations).  Nonetheless, even if Claims One, Two, and Three were not time barred, the assertions made by Mr. Kailey would be dismissed for the reasons stated below.

Mr. Kailey suggests that the state district court found his communication with his daughters in 1990 to be appropriate but that the DOC continues to violate the 1990 order by denying his ability to communicate with his daughters and grandchildren.  Am. Compl. at 27.  In support of this argument, Mr. Kailey refers to the attachments he filed in *Kailey v. Ritter, et al.*, No. 10-cv-02171-LTB (D. Colo. Feb. 10, 2011).  In particular, Mr. Kailey identifies a trial court hearing transcript where the court addressed his communication with his daughters.  *Id.* at Doc. No. 3-3

That hearing was conducted on July 24, 1990, for the purpose of determining whether a new trial was merited.  *See id.* at 45-48.  The trial court did not address Mr. Kailey's ability to visit, write, or otherwise verbally communicate with his daughters, who were the victims in his aggravated incest conviction.  The court was considering whether Mr. Kailey's making and sending of gifts to his daughters was an attempt to manipulate his daughters into recanting their previous testimony against him.  Nothing

6

in that hearing, or the portion of the transcript that Mr. Kailey attached in Case No. 11-cv-02171, indicates that the trial court was directing the DOC to provide Mr. Kailey visitation, telephone calls, and written correspondence privileges with his daughters.

Furthermore, Mr. Kailey attached a memorandum to the complaint in Case No. 11-cv-02171 that was given to him in September 1998.  The memorandum notifies him that effective June 1, 1998, pursuant to DOC Administrative Regulation (ARA) 300-1, he is denied visitation privileges with a minor child, who is unemancipated and under the age of eighteen, or a victim of the sex offense he committed, if such visitations are found to be contrary to his rehabilitation.  *See* Case No. 11-cv-02171, Doc. No. 3 at 50. Subsequently in 2004, Mr. Kailey's daughter inadvertently was allowed to visit him, but she was instructed that any future visits would be reviewed under AR 300-1, IV, B, 3, which requires her to seek permission from the Administrative Head and Mental Health Staff for her visit with her father.  *Id.* at 51.  As recently as December 2009, the DOC Mental Health Department recommended, pursuant to Colo. Rev. Stat. § 16-11.7, that Mr. Kailey should be denied visits with the victims of his sex offense and those under the age of eighteen.  *Id.* at 52.  The Mental Health Department further recommended that he should not be allowed to loiter near children in the visiting room or participate in any volunteer activity that involves contact with children, except as approved in advance and in writing by the sex offender treatment staff.  *Id.*

Mr. Kailey, conceded throughout his second amended complaint filed in *Kailey v. Ritter, et al.*, Case No. 11-cv-00143-LTB, Doc. No. 13 (D. Colo. June 23, 2011) (dismissed as legally frivolous), that he has not been able to participate in the DOC's Sex Offender Treatment and Monitoring Program (SOTMP).  Mr. Kailey also fails to

7

assert in this case that he has participated in any sex offender treatment programs over the course of his incarceration.  His only argument in support of his request for visitations with is oldest daughter is that his visits with his oldest daughter on or about November 4 and 14, 2004, "were successfully held without incident."  *See* Am. Compl. at 32.

The Court finds the following: (1) Mr. Kailey is incarcerated for committing incest against his three and four year old daughters; (2) there is an identified need for treatment as stated in attachments Mr. Kailey included in Case No. 10-cv-02171-LTB; (3) there is no state court order that directs the DOC to give Mr. Kailey visitation privileges with his daughters or grandchildren; (4) Mr. Kailey has no right to unfettered visitations; (5) prison officials have broad discretion in controlling visitor access; and (6) Mr. Kailey is allowed visitation rights with other family members who are in contact with his daughters and grandchildren.  A rational connection exists between Mr. Kailey's visitation restriction and a legitimate penological interest.  There is an alternative means for Mr. Kailey to communicate with his daughters and grandchildren.  Finally, there is no easy-to-implement alternative to accommodate Mr. Kailey's request for visitation privileges, and the possibility of a detrimental effect on the guards, other prisoners, and prison resources in general is great.  Based on these findings Mr. Kailey's restricted visitation privileges do not violate his constitutional rights.

As for the denial of his request to "reinstate" his ability to correspond with his daughters, Mr. Kailey has a "First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison."  *See Jacklovich v. Simmons*, 392 F.3d 420, 426

8

(10th Cir. 2004) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  "A prisoner also

has a constitutional right to have his outgoing mail processed for delivery, absent

legitimate penological interests to the contrary."  *Gee*, 627 F.3d at 1188 (citing *Treff v.

Galetka*, 74 F.3d 191, 195 (10th Cir. 1996).

Because there is no allegation that Mr. Kailey is participating in any sex

treatment program and in view of the deference afforded prison administrators in these

matters, *see Turner*, 482 U.S. at 107, the Court finds a legitimate penological interest in

denying Mr. Kailey the ability to correspond with his daughters or grandchildren.  Again,

Mr. Kailey does not assert that he is denied the ability to correspond with individuals

who were not the victims of his crime or with those individuals over the age of eighteen.

He is able to learn of the status of his adult daughters or grandchildren through his

allowed visitors.

Mr. Kailey's "right to telephone access is 'subject to rational limitations in the face

of legitimate security interests of the penal institution.' "  See Robinson v. Gunja, 92 F.

App'x 624, 627 (2004) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th

Cir. 1986)).  "The exact nature of telephone service to be provided to inmates is

generally to be determined by prison administrators, subject to court scrutiny for

unreasonable restrictions."  *Robinson*, 92 F. App'x at 628.  Given the above findings,

the Court does not find the restrictions on Mr. Kailey's telephone list of allowable callers

is unreasonable.  Again, Mr. Kailey may learn of the status of his daughters or

grandchildren through other individuals with whom he is allowed to communicate.

The Court further notes that, to the extent Mr. Kailey asserts claims on behalf of

his daughters and grandchildren in Claims One, Two, and Three, a litigant "generally

must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499 (1975). Insofar as the complaint makes allegations concerning his daughter's inability to communicate with him, Plaintiff lacks standing to complain of any resulting injuries.  In order to have standing in an Article III court, a plaintiff must show that (1) he personally suffered an actual or threatened injury; (2) the injury is fairly traceable to the defendant's illegal conduct; and (3) the injury is likely to be redressed by a favorable decision.  *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State Inc.,* 454 U.S. 464, 472 (1982); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  In addition to these constitutional standing requirements, courts also recognize certain judicially-created prudential principles that further limit the Court's adjudicatory ability. *See Valley Forge Christian Coll.,* 454 U.S. at 474 ("[b]eyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing"); *see also 4 Admin. L. & Prac.*  § 13:14 (2d ed.) ("[p]rudential considerations are limitations on the courts' power that the judiciary itself has devised . . .").

Nevertheless, even under prudential principles, a plaintiff can only assert his own rights and interests; he may not assert those of a third party.  *See Warth,* 422 U.S. at 499 (prudential standing requires plaintiff to assert "his own legal rights and interests"); *Gladstone Realtors v. Vill. of Bellwood,* 441 U.S. 91, 100 (1979) (prudential standing still requires plaintiff to "assert his own legal interests rather than those of third parties"); *see also cf. O'Malley v. Brierley,* 477 F.2d 785, 789 (3d Cir. 1973) (a plaintiff "may only assert his own constitutional rights or immunities . . . one cannot sue for the deprivation

of another's rights") (internal citations and quotations omitted).

Based on the above findings, Claims One through Three will be dismissed.

B.  Claim Four

In Claim Four, Mr. Kailey asserts that in November 2000 prison staff confiscated photographs of his daughters and grandchildren and either returned them to the sender at his expense or destroyed them in retaliation for a confrontation with one of the named defendants.

"Mere allegations of constitutional retaliation will not suffice; plaintiff must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (a plaintiff must demonstrate that the "alleged retaliatory motives were the 'but for' cause of the defendants' actions").

Deprivation of property without due process may rise to the level of a constitutional claim under § 1983, *see Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989), *abrogated on other grounds, Clark v. Wilson*, 625 F.3d 686 (10th Cir. 2010), but "neither negligent nor intentional deprivations of property under color of state law that are random and unauthorized give rise to a § 1983 claim where the plaintiff has an adequate state remedy," *id.* (citing *Hudson v. Palmer*, 468 U.S. 517 (1984).  Mr. Kailey does not assert that defendants acted pursuant to policy or that their actions were otherwise authorized.  Therefore, to state a § 1983 claim, Mr. Kailey was required to plead the inadequacy or unavailability of a post-deprivation remedy, *see Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989), which he does not do.

Mr. Kailey contends the taking of the pictures was a violation of his right to privacy under the Fourth Amendment.  There is no Fourth Amendment right, *per se*, against a search of a cell and seizure of property, *see Hudson*, 468 U.S. at 526, because there is no expectation of privacy in a prisoner's cell, *id.* at 524-30.

Mr. Kailey does not assert a protected interest in the confiscation of the photographs.   Any confrontation Mr. Kailey had, even if it was over the taking of the photographs, does not support a retaliation claim.

The Court also notes that Claim Four is barred by the statute of limitations. Nonetheless, the claim will be dismissed as legally frivolous.

C.  Claim Five

In Claim Five, Mr. Kailey asserts that his right to free exercise of religion was violated in 2007 when prison staff without notice intercepted and destroyed his Guidepost magazines based on questionable content.  Mr. Kailey further asserts that when he was transferred to the Bent County Correctional Facility in April 2008 prison staff found the Guidepost magazine to be beneficial to his mental health treatment.  Mr. Kailey does not assert that he currently is being denied access to the Guidepost magazine and does not request money damages with respect to the loss of any magazines in 2007.  He seeks prospective injunctive relief enjoining prison staff from taking any Guidepost magazines he currently has in his possession.  *See* Am. Compl. at 11-13.

"Plaintiffs seeking prospective relief must show more than past harm or speculative future harm."  *See Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) (citation and quotation marks omitted).  Mr. Kailey does not assert that his Guidepost

magazines have been taken from him since he was transferred to the Bent County facility in April 2008.  His claim of any future confiscation or destruction of the magazines is speculative and does not suggest that he will be subject to this policy again.

The Court also finds that Mr. Kailey's free exercise of religion claim lacks merit. Mr. Kailey concedes that the Guidepost publication is "non-denominational," although "devoutly Christian" and features "true stories of hope and inspiration."  Am. Compl. at 41.  Mr. Kailey also states in his Amended Complaint that in December 2008 he requested a "faith-based change" to the Messianic Jewish faith.  Am. Comp. at 43.

To state a violation of a right to free-exercise of religion under the First Amendment, Mr. Kailey must show that he was denied reasonable opportunities to exercise his sincerely held religious belief.  *See Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). He also "must establish that a prison regulation "substantially burdened . . . sincerely-held religious beliefs."  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007).  Restriction of Mr. Kailey's access to a Guidepost magazine that includes stories of hope and inspiration does not deny him the opportunity to exercise his sincerely held religious belief.  Moreover, Mr. Kailey has an adequate post-deprivation remedy for the loss of his property.

Even if the confiscation and destruction of Mr. Kailey's Guidepost magazines from August 2007 through March of 2008 violated his constitutional rights, the claim is barred by the statute of limitations.  The Court notes that Mr. Kailey first raised this claim in *Kailey v. Ritter, et al.*, No. 10-cv-02171-LTB (D. Colo. Feb. 10, 2010).  The case

13

was dismissed based on improper joinder of claims.  As a result, Mr. Kailey filed three separate cases, one of which is the instant action.  Even if Case No. 10-cv-02171 had been addressed on the merits, the Guidepost claim still would have been barred by the statute of limitations.  Mr. Kailey did not file Case No. 10-cv-02171 until September 7, 2010, over two years after his Guidepost magazines were confiscated.  *Braxton v. Zavaras*, 614 F.3d 1156 (10th Cir. 2010) ( limitations period is not automatically tolled during a prison's administrative grievance period).

Claim Five will be dismissed as legally frivolous.

D. Claim Six

In Claim Six, Mr. Kailey asserts that his right to free exercise of religion under the First Amendment was violated when he was prevented from obtaining emergency outreach community relief for his daughter, was strip searched after attending a Jewish service, and was prevented from participating in a "Kairas" four-day weekend event as an "inside team member."  Am. Compl. at 43.  The Court will address the strip search claim under Section "E. Claim Seven."

Relying again on the same legal authority set fourth in Claim Five, none of the fact allegations supporting Claim Six state a violation of Mr. Kailey's right to free exercise of religion under the First Amendment.

Nothing Mr. Kailey asserts in this claim indicates what the Kaira event involved or how the denial of his participation in the event substantially burdened his sincerely-held religious beliefs.  Mr. Kailey does not have a constitutional right to "access every type of program available to other inmates."  *See Estate of MiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1343 (10th Cir. 2007).

14

Also, Mr. Kailey's inability to seek community assistance for his daughter does not burden his sincerely-held religious beliefs.  Furthermore, Mr. Kailey does not have standing to raise a claim on behalf of his daughter.  A litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth,* 422 U.S. at 499.  Insofar as Mr. Kailey challenges the DOC's refusal to allow him to seek community assistance for his daughter, who allegedly at the time was living in her car with her children, Plaintiff lacks standing to complain of any resulting injuries.

Mr. Kailey's claim that Defendants Morten and Achen prohibited him from attending Passover services from April 3 through April 13, 2009, was raised for the first time in his Amended Complaint filed on July 18, 2011.  The claim, therefore, is barred by the statute of limitations.  Even if the claim was not time-barred, Mr. Kailey does not assert he has been denied the ability to attend any other religious services subsequent to his request to convert to the Messianic Jewish faith.  Nor does he state when his December 2008 request to convert to the Messianic Jewish faith was approved.  Also, contrary to Mr. Kailey's assertions, Passover in 2009 began on April 8 at sundown and ended on April 16 at sundown, *see* judaism.about.com/od/holidays/a/08_cal.htm, Jewish Holiday Calendar 5769, 2008-2009.  Mr. Kailey's Passover claim lacks credibility and will be dismissed as legally frivolous.

E.  Claim Seven

In Claim Seven, Mr. Kailey asserts that he was strip searched after he attended a Messianic Jewish worship service.  He contends that his Fourth, Fifth, and Fourteenth Amendment rights were violated by the strip search because he has a right to be free

15

from unreasonable searches and seizures.

Without more, the strip search claim does not state a violation of Mr. Kailey's constitutional rights, including his rights under the Eighth Amendment.  Mr. Kailey does not assert that the search was unreasonable based on the manner in which it was performed.  His only claim is that the search was done to intimidate him because it was the first Messianic Jewish service he had attended at the Sterling Correctional Facility.

To the extent that Mr. Kailey is raising a free exercise of religion claim in Claim Seven, he does not show that he was denied reasonable opportunities to exercise his sincerely-held religious belief.  Mr. Kailey was allowed to attend the worship service and was subjected to a strip search after leaving the service on only one occasion.  Nothing Mr. Kailey alleges supports a claim that the strip search was done for any reason other than a previous candle theft.  Also, nothing supports Mr. Kailey's intimidation claim. All attendees were strip searched when they left the worship service; Mr. Kailey was not singled out to be searched.  Claim Seven, therefore, will be denied as legally frivolous.

F.  Claim Eight

In Claim Eight, Mr. Kailey asserts that in violation of his Eighth Amendment rights he was required to top load bakery racks, which was unsafe, and resulted in the rack collapsing on him and reinjurying his reconstructed right knee.  He also asserts that he fell on a sidewalk during a snow storm because defendants were deliberately indifferent in clearing the snow.  As a result, he tripped over a steel metal tunnel cover that was covered with snow and suffered a severe sprain of his left ankle.  Mr. Kailey also asserts in Claim Eight that in 2009 he was housed with violent gang members who robbed him.

Mr. Kailey's robbery claim will be dismissed as repetitive.  Mr. Kailey raised this claim in *Kailey v. Ritter, et al.*, No. 11-cv-00614-REB-BNB, Doc. No. 5 at 20 (D. Colo. filed Mar. 11, 2011).  Repetitious litigation of virtually identical causes of action may be dismissed as frivolous or malicious.  *See Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (per curiam); *Van Meter v. Morgan*, 518 F.2d 366, 368 (8th Cir. 1975) (per curiam).  The Court may consult its own records to determine whether a pleading repeats pending or previously litigated claims.  *See Duhart v. Carlson*, 469 F.2d 471 (10th Cir. 1972).  The Court has examined its records and is satisfied that the claims are repetitive of the claims Mr. Kailey asserted in Case No. 11-cv-00614-REB-BNB.  The claim will be dismissed as legally frivolous.

As for his knee and ankle claims, Mr. Kailey fails to assert how all of the named defendants in this claim personally participated in activities that may have violated his Eighth Amendment rights.  In the Order to Amend dated March 22, 2011, Magistrate Judge Boland instructed Mr. Kailey that in order to establish personal participation, he must show that each defendant caused the deprivation of a federal right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  A named defendant may not be held liable merely because of his or her supervisory position.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).

To state a claim in federal court, a complaint must explain what each defendant did to harm a plaintiff, when the defendant did it, how the defendant's action harmed the

17

plaintiff, and what specific legal right the plaintiff believes the defendant violated. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

The Court finds only six of the named defendants in Claim Eight may be found to have personally participated in the alleged constitutional violations.  Therefore, the claims asserted against Defendants Mark Buttons, Mary Keegan, Reuben Bastidos, Walter Forward, Thomas Bentley, and Gregory Bradford will be assigned to District Judge Robert E. Blackburn, pursuant to D.C.COLO.LCivR 40.1C.1., and to Magistrate Judge Boyd N. Boland.  All of the other named defendants in this claim will be dismissed because their alleged actions either do not state a constitutional violation or the claim alleged against them is too attenuated to equate to personal participation in this claim.

G.  Claim Nine

In Claim Nine, Mr. Kailey asserts defendants retaliated against him for filing administrative grievances in violation of his First and Fourteenth Amendment rights.

Again, as in the other eight claims, the allegations in Claim Nine do not meet the requirements of Fed. R. Civ. P. 8.  The claims are presented in a narrative, chronological format rather than in a short and concise statement.  Mr. Kailey has been instructed on several occasions that his complaints violate the requirements of Rule 8. *See* Mar. 22, 2011 Order, Doc. No. 7; *Kailey v. Ritter, et al.*, No. 11-cv-00143-LTB, Doc. No. 14 (D. Colo. June 23, 2011) (dismissed as frivolous but found to not comply with Rule 8); *Kailey v. Owens, et al.*, No. 11-cv-00144-LTB, Doc. No. 7 (D. Colo. June 23, 2011) (instructed to amend and comply with Rule 8 subsequently dismissed as legally frivolous); *Kailey v. Ritter, et al.*, No. 10-cv-02171-LTB at Doc. No. 16 (D. Colo. Feb. 10,

18

2011) (dismissed for failure to comply with Rule 8).

In Claim Nine Mr. Kailey complains that (1) in retaliation for filing administrative grievances he was disciplined with a poor work performance review; (2) he was subjected to an unwarranted disciplinary action for not signing restricted privileges paperwork; (3) he was transferred to a more restrictive prison facility when he initiated a hunger strike in response to retaliation against him; (4) he was subjected to a disciplinary action for making threats, but the action was done in retaliation for filing administrative grievances; and (5) he has been denied access to the grievance procedure since July 28, 2010.

As stated above, "[m]ere allegations of constitutional retaliation will not suffice; plaintiff must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier*, 922 F.2d at 562 n.1; *see Peterson*, 149 F.3d at 1144 (a plaintiff must demonstrate that the "alleged retaliatory motives were the 'but for' cause of the defendants' actions"). Mr. Kailey's own factual assertions provide a basis for the disciplinary actions brought against him. He, therefore, has failed to assert that the but for causes of defendants' filing disciplinary actions against him were done in retaliation for filing administrative grievances.

Finally, there is no independent constitutional right to state administrative grievance procedures. *See Boyd v. Werholtz*, No. 10-3284, 2011 WL 4537783, *1 (10th Cir. Oct. 3, 2011) (unpublished). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *See id.* (citing *Bingham v. Thomas,* 654 F.3d 1171, 1177 (11th Cir. 2011) (observing that inmates have no constitutionally-protected liberty interest in access to prison grievance

19

procedure); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (per curiam) ("A prison

grievance procedure is a procedural right only, it does not confer any substantive right

upon the inmates.  Hence, it does not give rise to a protected liberty interest . . . ."

(quotation and brackets omitted)).  Rather "[w]hen the claim underlying the

administrative grievance involves a constitutional right, the prisoner's right to petition the

government for redress is the right of access to the courts, which is not compromised by

the prison's refusal to entertain his grievance." *Boyd*, 2007 WL 4537783 at *1  (quoting

*Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (per curiam) (internal quotation marks

omitted).  Mr. Kailey's alleged restriction from filing grievances does not state a right of

access claim.  Claim Nine, therefore, will be dismissed as legally frivolous.

H.  Claim Ten

This claim will be dismissed as repetitive of the claims that Mr. Kailey has raised

in Claims One through Nine.

III.  CONCLUSION

Accordingly, it is

ORDERED that the Complaint and action, in particular Claims One through

Seven, Nine and Ten and parts of Claim Eight are dismissed as legally frivolous

pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  It is

FURTHER ORDERED that the Complaint and action in part, as it pertains to Claim Eight, specifically Mr. Kailey's knee and ankle claims asserted against Defendants Mark Buttons, Mary Keegan, Reuben Bastidos, Walter Forward, Thomas Bentley, and Gregory Bradford shall be assigned to District Judge Robert E. Blackburn, pursuant to D.C.COLO.LCivR 40.1C.1., and to Magistrate Judge Boyd N. Boland.

DATED at Denver, Colorado, this __17th__ day of ___November___, 2011.

BY THE COURT:

__s/Lewis T. Babcock_____
LEWIS T. BABCOCK, Judge
United States District Court